# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOE GLOVER, FAMILY POLICY NETWORK, and AIRSIGN, LLC,**

    **Plaintiffs,**

-vs-                                            Case No. 6:03-cv-751-Orl-22JGG

**FEDERAL AVIATION ADMINISTRATION, UNITED STATES DEPARTMENT OF TRANSPORTATION, and TRANSPORTATION SECURITY ADMINISTRATION,**

    **Defendants.**

---

## ORDER

### I. INTRODUCTION

This cause comes before the Court for consideration of the Plaintiffs', Joe Glover, Family Policy Network, and Airsign, LLC ("the Plaintiffs"), Motion for Temporary Restraining Order (Doc. No. 4), and memorandum in support thereof (Doc. No. 6), filed June 4, 2003, to which the Defendants, the Federal Aviation Administration, United States Department of Transportation, and Transportation Security Administration ("the Defendants"), responded (Doc. No. 8) on June 5, 2003. A Temporary Restraining Order (TRO) hearing was held on June 5, 2003. Having reviewed the motion, the memorandum, the record, and the Parties' arguments, this Court **DENIES** the Plaintiffs' Motion for Temporary Restraining Order (Doc. No. 4).

## II. BACKGROUND

On February 20, 2003, Congress passed an Omnibus Spending Bill in which it established a no-fly zone over Walt Disney World, banning all flights below 3,000 feet and within a 3 mile radius of the center of the park. *See* Consolidated Appropriations Resolution, 2003, Division I, Section 352, Pub. L. No. 108-7, 117 Stat. 11, 419-20. On First Amendment grounds, the Plaintiffs now move this Court for a temporary restraining order granting the Plaintiffs permission to fly a banner over Walt Disney World proclaiming "JESUS CHRIST: HOPE FOR HOMOSEXUALS.COM" during "Gay Day" at the park. *See generally* Doc. No. 4. Specifically, the Plaintiffs request that this Court restore the status quo as it existed prior to the Omnibus Spending Bill, whereby the Federal Aviation Administration (FAA) had the power to grant waivers to the no-fly zone whenever pilots underwent criminal background checks and other security clearances. *See* Doc. No. 6 at 2.

## III. STANDARD OF REVIEW

A temporary restraining order is an extraordinary and drastic remedy not to be granted until the movant "clearly carries the burden of persuasion" as to four prerequisites. *Glen Raven Mills, Inc. v. Ramada Int'l, Inc.*, 852 F. Supp. 1544, 1547 (M.D. Fla. 1994) (internal citations omitted). Those prerequisites include the following:

(a)  that there is a substantial likelihood of success on the merits;

(b)  that the TRO is necessary to prevent irreparable injury;

(c)  that the threatened injury to the movant outweighs the harm that the TRO would cause to the non-movant; and

(d)  that the TRO would not be adverse to the public interest.

*See Parker v. State Bd. of Pardons & Paroles*, 275 F. 3d 1032, 1034-1035 (11th Cir. 2001), *cert. denied*, 534 U.S. 1072 (2001); *see also Zardui-Quintana v. Richard*, 768 F. 2d 1213, 1216 (11th Cir. 1985), *reh'g, en banc, denied*, 778 F. 2d 793 (11th Cir. 1985).

## IV. LEGAL ANALYSIS

After analyzing the Plaintiffs' Motion for a Temporary Restraining Order (Doc. No. 4), this Court finds that the Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits. Specifically, the Plaintiffs have failed to establish a satisfactory basis for exercising jurisdiction over the issue of whether the no-fly zone is necessary for national security, a crucial determination insofar as the Plaintiffs' First Amendment and Equal Protection claims are concerned.

On that issue, the "justiciability of [the] controversy depends not upon the existence of a federal statute, but [rather] upon whether judicial resolution of that controversy would be consonant with the separation of powers principles embodied in the Constitution." *Aktepe v. United States*, 105 F. 3d 1400, 1402 (11th Cir. 1997), *cert. denied*, 522 U.S. 1045 (1998) (internal citations omitted).

"Separation of powers is a doctrine to which the courts must adhere even in the absence of an explicit statutory command." Id. (internal citations omitted). In that connection, "[r]estrictions derived from the separation of powers doctrine prevent the judicial branch from deciding political questions[;]" that is, "controversies that revolve around policy choices and value determinations constitutionally committed for resolution to the legislative or executive branches." *Id.* (internal citations and quotations omitted).

In *Baker v. Carr,* 369 U.S. 186, 217 (1962), the United States Supreme Court identified six characteristics of a political question. Those characteristics include the following: (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department; (2) or a lack of judicially discoverable and manageable standards for resolving the issue; (3) or the impossibility of deciding the issue without an initial policy determination of a kind clearly for nonjudicial discretion; (4) or the impossibility of a court's undertaking independent resolution of the issue without disrespecting coordinate branches of government; (5) or an unusual need for unquestioning adherence to a political decision already made; (6) or the potentiality of embarrassment from multifarious pronouncements by various branches of government on the issue. *Id.* at 217.

"For invocation of the political question doctrine to be appropriate, at least one of these characteristics must be evident." *Aktepe,* 105 F. 3d at 1403 (internal citation omitted).

Applying the *Baker* factors to the case at hand, this Court finds that it is unlikely that the issue of whether the no-fly zone is necessary for national security is justiciable.

Foremost, it is well established that issues of "national security . . . are textually committed by the Constitution to the political branches of government." *Greenham Women Against Cruise Missels v. Reagan,* 591 F. Supp. 1332, 1336 n.8 (S.D.N.Y. 1984), *aff'd,* 755 F. 2d 34 (2nd Cir. 1985); *see also Haig v. Agee,* 453 U.S. 280, 292 (1981) ("Matters intimately related to . . . national security are rarely proper subjects for judicial intervention"); *Custer County Action Ass'n v. Garvey,* 10 Fed. Appx. 165, *13 (10th Cir. 2001) (holding that the political question doctrine precluded review of a decision of the FAA to increase airspace over Colorado for military training

because it constituted a matter of national defense), *cert. denied*, 534 U.S. 1127 (2002); *Saavedra Bruno v. Albright*, 197 F. 3d 1153, 1162 (D.C. Cir. 1999) ("When it comes to matters touching on national security or foreign affairs . . . the presumption of review runs aground") (internal citations and quotations omitted); *See Industria Panificadora, S.A. v. United States*, 763 F. Supp. 1154, 1159-1160 (D.D.C. 1991) ("It is well established that decisions pertaining to national security . . . are entrusted to the political branches"), *aff'd*, 957 F. 2d 886 (D.C.Cir. 1992), *cert. denied*, 506 U.S. 908 (1992).

Second, it is apparent that there is a lack of judicially discoverable and management standards for resolving this issue. Indeed, to examine the propriety of the no-fly zone over Walt Disney World, this Court would have to access recent intelligence briefings in addition to becoming familiar with past threats to United States' landmarks. Currently, only the Select Intelligence Committee and the President of the United States have access to such information. *See Industria Panificadora, S.A.*, 763 F. Supp. 1154, 1160 (dismissing case on justiciability grounds because "decisions which affect our national security involve policy decisions beyond the scope of judicial expertise [and] . . . [t]o attempt to decide such a matter without the necessary expertise and in the absence of judicially manageable standards would be to entangle the court in matters constitutionally given to the executive branch") (internal citations and quotations omitted).

Third, reviewing this case would require this Court to make an initial policy determination of a kind clearly for non-judicial discretion. In effect, this Court would be assessing the National Threat Level.

Fourth, in light of their intense focus on homeland security, reviewing the necessity of the no-fly zone would express a lack of respect for the legislative and executive branches of government.

Fifth, there is an unusual need for unquestioning adherence to this political decision in light of the September 11th terrorist attacks and the ensuing War on Terrorism.

And finally, given the media attention associated with the no-fly zone over Walt Disney World, the potential for embarrassment on account of multifarious pronouncements on this issue is highly likely.

## V. CONCLUSION

Based on the foregoing, it is **ORDERED** that the Plaintiffs', Joe Glover, Family Policy Network, and Airsign, LLC, June 4, 2003 Motion for Temporary Restraining Order (Doc. No. 4) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida this ___6___ day of June, 2003.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties
Administrative Law Clerk

FILE COPY

Date Printed: 06/09/2003

Notice sent to:

✓ Stephen M. Crampton, Esq.
American Family Association Law Center
107 Parkgate Dr.
P.O. Box 2440
Tupelo, MS  38801

✓ Brian Fahling, Esq.
American Family Association Law Center
P.O. Drawer 2440
107 Parkgate
Tupelo, MS  38803

✓ Mathew D. Staver, Esq.
Liberty Counsel
210 E. Palmetto Ave.
Longwood, FL  32750

✓ Erik W. Stanley, Esq.
Liberty Counsel
210 E. Palmetto Ave.
Longwood, FL  32750